# In the United States Court of Federal Claims

No. 14-1092C
(Re-filed: February 27, 2015)[1]

* * * * * * * * * * * * * * * * * * * * * * *

RED RIVER COMPUTER CO., INC.,

        *Plaintiff,*

v.

THE UNITED STATES,

        *Defendant.*

* * * * * * * * * * * * * * * * * * * * * * *

Bid protest; Competitive range determination; Past Performance; Prejudice.

*H. Todd Whay*, Sterling, VA, for plaintiff.

*Robert C. Bigler*, Civil Division, Department of Justice, Washington, DC, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman*, Jr., Director, and *Allison Kidd-Miller*, Assistant Director, for defendant. *Cameron R. Edlefson*, Major, United States Army Legal Services Agency, of counsel.

OPINION

BRUGGINK, *Judge*.

    This action is brought pursuant to the court's bid protest jurisdiction. Plaintiff, Red River Computer Co., Inc., an unsuccessful offeror for an information technology ("IT") supply contract, alleges that the United States Department of the Army  (hereinafter the "agency," or "army"), through its

---

1. The materials submitted in this case were subject to a protective order. We directed the parties to confer and propose any redactions to chambers by February 17, 2015.  The parties did not propose any redactions.  The opinion thus appears as in the original.

Rock Island Contracting Center, acted arbitrarily when it excluded plaintiff from the competitive range. The parties have filed cross-motions for judgment on the administrative record. Those motions are fully briefed. Oral argument was held on February 3, 2015.  Because defendant did not act arbitrarily, capriciously, or otherwise in violation of the law, we deny plaintiff's motion and grant defendant's motion.

BACKGROUND

On September 25, 2012, the agency issued the "Information Technology Enterprise Solutions-3 Hardware" ("ITES-3H") Solicitation W52P1J-11-R-0171 (hereinafter the "Solicitation" or "RFP") to furnish the agency with IT equipment and solutions at a reasonable price. Administrative Record ("AR") 72-74. The agency plans to award to at least eight offerors under an indefinite delivery/indefinite quantity ("IDIQ") contract with up to four awards reserved for small businesses.  It reserves the right to make no awards or more than eight awards.

The ceiling cost for the ITES-3H project is $5 billion over a five-year period of performance, which consists of a base period of three years and two one-year agency options. Each offeror is guaranteed a minimum of $10,700 in orders under the IDIQ contract.

The army is utilizing a two-phase evaluation process for the acquisition. The first phase has been completed, and the agency is currently conducting the second phase.  Phase I required bidders to demonstrate their capabilities in supplying commercial IT hardware in compliance with the operating environment.  The agency evaluated the Phase I proposals on an acceptable/unacceptable basis and eliminated any offerors that failed to receive an acceptable rating. As a result of the Phase I evaluation, 39 out of 50 initial offerors were invited to submit a Phase II proposal. Phase II proposals consist of information regarding managerial and technical capability, track record of handling similar projects, and the price proposed for the work.  Eight of the offerors that moved on to Phase II were large businesses, and the remaining 31 offerors, including plaintiff, were small businesses.

Phase II is a best value tradeoff process in which offerors with proposals that are determined to be the most beneficial to the agency are awarded a contract. The agency's decision is made based on its assessment of a set of factors and subfactors set forth in the solicitation. The first factor, Mission Support, is the most important of the three main factors. The second

factor, Past Performance, is more important than the last, Price. Price is important, the solicitation states, but the non-price factors combined are significantly more important than Price. The solicitation provides that Price will be evaluated but not rated.

The Mission Support factor has three subfactors. Subfactor 1, Management, is more important than Subfactor 2, Technology; and Technology is more important than Subfactor 3, Small Business Participation. The solicitation provides that the Mission Support factor and the three subfactors would be rated using one of the following adjectives: (1) "Outstanding;" (2) "Good;" (3) "Acceptable;" (4) "Marginal;" and (5) "Unacceptable." AR 186. In order to be considered for an award, an offeror must receive a rating of no less than "Acceptable" for the Mission Support factor and all of its subfactors. "Acceptable" is defined as follows: "Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses are offsetting or will have little or no impact on contract performance. Risk of unsuccessful performance is no worse than moderate." *Id.*

When evaluating the Past Performance factor, the agency inquired of offerors' recent track record in performing similar contracts in order to satisfy the agency's minimum confidence requirement that the work could be performed by a particular offeror. The solicitation calls for a bidder to submit no more than five previous contracts with an annual minimum dollar value of $5 million for equipment and related incidental services that would represent the offeror's recent and relevant performance of similar government (federal, state, or local) and/or commercial contracts.[2] Each reference was required to

---

2. A "recent contract" is defined by the solicitation as "prime contracts, delivery orders, or subcontracts where services or deliverables were performed, or are still being performed within approximately three years of issuance of" the solicitation. AR 178. "Relevant performance" means "performance that demonstrates the offeror, as a prime and/or first tier subcontractor, has successfully performed or is currently performing on contracts/delivery orders that encompass commercial IT equipment and incidental services that are the same or similar in complexity as described in" the solicitation. *Id.*

contain a specific narrative explaining how the effort was relevant to the requirements of the present solicitation.[3]

The relevance of an offeror's past performance was rated using one of the following terms:

| Very Relevant | Present/past performance effort involved essentially the same scope and magnitude of effort and complexities this solicitation requires. |
|---|---|
| Relevant | Present/past performance effort involved similar scope and magnitude of effort and complexities this solicitation requires. |
| Somewhat Relevant | Present/past performance effort involved some of the scope and magnitude of effort and complexities this solicitation requires. |
| Not Relevant | Present/past performance effort involved little or none of the scope and magnitude of effort and complexities this solicitation requires. |

AR 187.

In addition to the recent relevant contract references, the solicitation requires offerors to also identify and report any contract in which the offeror "experienced any performance problems related to deliverables, warranties, or services" and any recent contracts that were terminated or cancelled in whole or in part for any reason within the past three years.  AR 179.

The solicitation further provides that the agency reserves the right to use both data provided in the offerors' proposals and data obtained by the agency from other sources.  The burden of providing "thorough and complete past performance information" rests with the offeror. *Id.*

The Past Performance factor was rated using the following adjective ratings:

---

3. The requirements include aspects of schedule and performance in areas such as: program management; delivery of products; warranties; related incidental services; problem resolution; compliance and conformance to contract requirements; personal management; and cost controls. AR 187.

| Substantial Confidence | Based on the offeror's recent/relevant performance record, the agency has a high expectation that the offeror will successfully perform the required effort. |
|---|---|
| Satisfactory Confidence | Based on the offeror's recent/relevant performance record, the agency has a reasonable expectation that the offeror will successfully perform the required effort. |
| Limited Confidence | Based on the recent/relevant performance record, the agency has a low expectation that the offeror will successfully perform the required effort. |
| No Confidence | Based on the offeror's recent/relevant performance record, the agency has no expectation that the offeror will be able to successfully perform the required effort. |
| Unknown Confidence (Neutral) | No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned. |

AR 187-88.

The solicitation states that Price is an evaluation factor but is not adjectively scored. The solicitation adheres to the Federal Acquisition Regulation's ("FAR") requirement that contracts be awarded at prices that are fair and reasonable. *See* 48 C.F.R. § 15.402(a) (2014). The solicitation provides that the agency reserves the right to make an award to other than the lowest priced offeror.

Plaintiff submitted its Phase II proposal on May 14, 2013. In the proposal, plaintiff included five projects which it had previously undertaken as recent and relevant contract references. Additionally, plaintiff submitted two contract references reflecting adverse performance. The initial Phase II evaluation was performed by the agency's Source Selection Evaluation Board ("SSEB"), which presented its ratings on May 29, 2014, to the Source

Selection Advisory Council ("SSAC"), and on June 4, 2014, to the Source Selection Authority ("SSA"), the ultimate decision maker.

On July 11, 2014, the agency established a competitive range under 48 C.F.R. § 15.306(c)(2), as contemplated in the RFP, to allow the Contracting Officer ("CO") to "limit the number of proposals in the competitive range to the greatest number that will permit an efficient competition among the most highly rated proposals." AR 890. The solicitation states that the agency would engage in discussions only with offerors within the competitive range and ask them to submit a final proposal revision before awarding contracts. AR 171.

In order to be included in the competitive range, an offeror had to achieve, at minimum, the following ratings: A Mission Support factor rating of "Good;" a Past Performance factor rating of "Satisfactory Confidence;" and a price among the twelve lowest offerors meeting the technical and past performance criteria. AR 938. As a result, the agency initially included 12 offerors in the competitive range.[4] Plaintiff was not one of them.

Plaintiff's proposal garnered an overall rating of "Good" for the Mission Support factor, scoring the same rating for all three subfactors. In assigning the "Good" rating to all three subfactors, the agency identified four strengths for the Management subfactor and no weaknesses, two strengths and no weaknesses for the Technology subfactor, and five strengths that outweighed two weaknesses and one significant weakness for the Small Business Participation subfactor. AR 918.

For the Past Performance factor, the agency rated three of the five contract references plaintiff submitted in its proposal as "Relevant" and the remaining two as "Somewhat Relevant." AR 957. Plaintiff self-reported two previous contracts with adverse performance issues.[5] The agency also found

---

4. The total number of offerors in the competitive range now stands at 16 after the agency took corrective action and added four offerors, all of whom protested their initial exclusions with the Government Accountability Office.

5. *See* AR 711-15. The first contract reference that plaintiff reported as having an adverse performance issue was with the United States Department of State, in which it missed the original shipment date. Plaintiff explained that the delay was beyond its control due to a shortage of raw materials and a supply chain
(continued...)

five previous federal contracts for which plaintiff did not report performance related issues.  *See* AR 744-45. The SSEB stated in its evaluation for the Past Performance factor that these five unreported contract references "had a significant negative influence in assigning the past performance rating." AR 746. As a result of the SSEB's assessment, plaintiff initially received a rating of "Limited Confidence" with respect to past performance from the SSEB. AR 918. When the recommendations reached the SSA, however, she downgraded the rating to "No Confidence" based on the five adverse contract references that the agency independently "found for the last twelve months." AR 936. Plaintiff's proposed price was ranked tenth lowest among all 39 offerors. AR 919. As a result of its poor past performance rating, the SSA did not include plaintiff in the competitive range.

Plaintiff received a debriefing from the agency on July 29, 2014. The agency stated in its presentation that "[a]dverse performance information found in a few recent [contract references] that were not self-reported by the Offeror illustrated a trend of concern." AR 957 (Debriefing presentation slides). Furthermore, the agency stated in the slides that "[t]he five [contract references] found within the last year revealed negative performance issues . . . . These recent negative performance issues definitely had a negative impact on the Offeror's performance rating." *Id.*

Plaintiff filed a protest with the Government Accountability Office ("GAO") on August 8, 2014, making two arguments: (1) The agency unreasonably evaluated plaintiff under the Past Performance factor;[6] and (2)

---

5(...continued)
disruption caused by the 2011 earthquake and tsunami in Japan. The second adverse contract reference plaintiff reported was with the Air Force, in which the contract was  terminated as a result of corrective action in response to protests filed against the Air Force. Plaintiff emphasized that "all contract awards were terminated for the same reason." AR 713.  The SSEB reported that it was unconcerned with the two negative references supplied by Red River because it accepted Red River's explanation of events beyond its control.

6. *See* AR 28-36. Plaintiff made two sub-arguments under the first main argument. First, it asserted that the agency's "No Confidence" rating under the Past Performance factor was unreasonable. Second, plaintiff contended that the
(continued...)

The agency unreasonably evaluated plaintiff under the Small Business Participation technical subfactor. On September 18, 2014, plaintiff filed a supplemental protest with the GAO, contending that the agency: (1) failed to properly consider price in establishing the competitive range; (2) failed to properly document its evaluations; (3) disparately treated information when evaluating plaintiff's past performance; and (4) evaluated offerors' proposals in an unreasonable and unequal manner. *See* AR 1110-19. In a consolidated decision, GAO denied plaintiff's protests, finding that the "agency reasonably determined that [plaintiff's] past performance merited a rating of no more than limited confidence (in the view of the evaluators), or even no confidence (in the SSA's view) and reasonably excluded [plaintiff] from the competitive range." AR 3421.

Plaintiff then filed its complaint here on November 10, 2014, making four allegations: (1) defendant's assignment of a "No Confidence" rating to plaintiff's past performance was improper; (2) defendant utilized unstated evaluation criteria in evaluating plaintiff's past performance; (3) defendant treated plaintiff unequally; and (4) defendant failed to consider plaintiff's price when it established the competitive range. Compl. ¶¶ 7-11. Plaintiff did not request a preliminary injunction. Subsequently, plaintiff filed a motion for judgment on the administrative record and defendant filed a cross-motion.

## DISCUSSION

The Tucker Act, as amended by the Administrative Dispute Resolution Act, confers jurisdiction upon this court "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). An "interested party" is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Emps. Local 1482 v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001).

---

6(...continued)
agency's rating of "Relevant" for one of the five contract references it submitted in its proposal was unreasonable.

In exercising our bid protest jurisdiction, we adhere to the standards set forth in section 706 of the Administrative Procedure Act ("APA"), which means that we will vacate an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2012). An agency's action would be considered "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Thus, the agency's action will be set aside if it lacked a rational basis or if it involved a prejudicial violation of procedure. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Because the IDIQ contract will be awarded based on "best value," the agency has greater discretion than if the contract were to be awarded on the basis of price alone. *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)). "The greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious." *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980). Accordingly, this court's review should be "highly deferential" to the agency's determination. *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 726 (2008) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)).

Plaintiff protests that the agency acted in an arbitrary, capricious, or unlawful manner and raises the following issues for disposition: (1) whether the "No Confidence" rating under the Past Performance factor was improperly given to plaintiff; (2) whether the evaluation resulted in the unequal treatment of offerors; (3) whether the agency improperly failed to consider plaintiff's proposed price when it established the competitive range; and (4) whether the agency's assigned rating of "Relevant" rather than "Very Relevant" to one of five contract references plaintiff submitted in its proposal was improper.[7]

I.      "No Confidence" Rating On Plaintiff's Past Performance

---

7. Plaintiff made an additional argument–that the agency failed to adequately document its evaluations–which is related to its third and fourth arguments and will be considered in connection with those arguments.

Plaintiff's primary argument is that the agency's "No Confidence" rating for plaintiff's past performance was irrational because it was based on a mistake of fact and reflects the application of an unstated evaluation criterion.  Specifically, plaintiff argues that the agency (1) was mistaken in its belief that the five unreported references were performed in the year 2013, rather than earlier, and (2) utilized an unstated evaluation criterion–that plaintiff failed to self-report the five adverse references–to rate plaintiff lower than it deserved.

A.  The Army's Evaluation Comments

We begin with the agency's statements regarding plaintiff's past performance.  The SSEB, in its Past Performance Report, examined the five positive and two negative contract references submitted by Red River.  The report also includes review of five Contract Performance Assessment Reports ("CPAR") that the SSEB's Past Performance Team independently located: "The Past Performance team found other less than favorable performance that was found in the PPIRS database.  The offeror did not self-report the following CPARs."  AR 744.  The SSEB considered all the references, reported and unreported, and concluded, based primarily on the five unreported references, that it had "Limited Confidence" in Red River's ability to successfully perform the work in light of its past performance.  AR 747.  It concluded that,"the performance found on the CPARs that reported less [than] favorable performance . . . and was not self-reported by the Offeror, had a significant negative influence in assigning the past performance rating."  *Id.*

The SSAC reviewed the SSEB's reports and generated a slide show summarizing Red River's past performance in this way: "The five CPAR reports found within the last year, revealed negative performance issues concerning quality, scheduling, late deliveries, damaged equipment, inconsistent communications with the government and management of key personnel.  These recent negative performance issues definitely had a negative impact on the Offeror's performance rating."  AR 846.

The SSA, in her Memorandum For Record regarding the competitive range determination, summarized the SSEB's findings as follows:

The five CPAR reports found within the last year revealed negative performance issues concerning quality, scheduling, late deliveries, damaged equipment, inconsistent communications with the Government and management of key personnel.  These

10

recent negative performance issues definitely had a negative impact on the Offeror's performance rating. Of the references submitted, the performance information that was received or found revealed that the Offeror received some favorable performance ratings and comments. However, based on the Offerors recent/relevant performance record, the Government has a low expectation that the Offeror will successfully perform the required effort. No strengths, weaknesses or deficiencies were found. The Offeror was given an opportunity to respond to an IFC regarding the issues of less than favorable quality and delivery performance that were not self-reported by the Offeror. The IFC was responded to, but the response did not affect the Offeror's initial past performance rating.

AR 918-19.

The SSA conducted her own review of Red River's contract references and downgraded plaintiff to a rating of "No Confidence" based on "the five CPARs found for the last twelve months (which revealed negative performance issues concerning quality, scheduling, late deliveries, damaged equipment, inconsistent communications with the Government and management of key personnel) and my having no expectation that the Offeror will be able to successfully perform the required effort." AR 936.

The subsequent protests by plaintiff and others at GAO generated two agency reports authored by the CO.[8]  The first report contains a statement as to one of the negative references that this "information was not self-reported by Red River (as required by the Solicitation), and this fact was taken into consideration as well in assessing the negative rating." AR 9.  On the next page of the first report, she summarized the SSA's rating of "No Confidence" as based on the five negative contract references "found for the last twelve months," AR 9, which reflected a "trend of recent activity in the last year [that] was especially concerning, and reflected poorly on expectations for Red River's performance if it had received an ITES-3H award." AR 10.  In the second report, the CO stated generally that "it was reasonable for the Army to

---

8.  Plaintiff filed a supplemental protest at GAO, which prompted a second agency report authored by the CO.  Although none of the evaluations at issue were performed by the CO, she was the author of the reports to GAO per GAO's governing regulations.

consider the nature of this information itself, along with the fact that it was not self-reported, when assigning Red River a poor rating under the Past Performance factor." AR 1099. As to the timing of performance, she stated that the "SSA also considered the fact these elements of negative performance all occurred in the last 12 months. . . . This could be seen as a trend of poor management and control. . . . Red River appeared to have a trend of negative performance that was not outweighed by other positive information in its record." AR 1100.

B. The Timing of the Five Adverse Contract References

Plaintiff asserts that statements by the SSEB, SSA, and CO demonstrate that the agency's assessment of Red River's past performance was based on a misunderstanding of the facts, because, contrary to the agency's understanding, the performance of four of the five contracts did not occur within the twelve months prior to the evaluation. Plaintiff argues that the agency gave greater weight to those adverse references due to a mistaken understanding of how recent the performance was and gave insufficient weight to the positive references supplied by plaintiff. Plaintiff points out that four out of the five additional contract references were, in fact, performed in 2011, and only one was performed in 2013.[9] Plaintiff does not dispute that it was proper for the agency to consider the five negative references–they were within the period deemed relevant by the solicitation–but urges that the army acted arbitrarily by finding the additional references to be particularly relevant based on a mistake as to the timing of performance of those contracts and to have relied on this mistake in downgrading plaintiff.

Defendant's principal response is that, even if the SSA and CO were operating under a false impression, which it does not concede, plaintiff was not prejudiced by it. The SSEB, defendant points out, rated plaintiff "Limited Confidence" for Past Performance, a failing grade. Plaintiff thus would have been excluded from the competitive range regardless of the SSA's further downgrade of plaintiff's past performance rating. The critical assumption behind defendant's argument is that the SSEB was not also wrong about when four of the five unreported contracts were performed.

---

9. Four out of the five contracts were IT equipment orders by the Department of State, three of which were filled in 2011 and the fourth in 2013. The fifth was an order by the Department of Justice and was performed in 2011.

We agree.  We do not read the record to establish that the SSEB was operating under the misconception that plaintiff's performance of all five of the unreported contracts occurred in 2013.   The SSEB's statement, quoted below, is factually accurate:

> The five [contract references] found within the last year, revealed negative performance issues concerning quality, scheduling late deliveries, damaged equipment, inconsistent communications the the Government and management of key personnel.  These recent negative performance issues definitely had a negative impact on the Offeror's performance rating.

AR 846.  The five references were, indeed, "found" by the agency within the last year.  This explains why they were unreported by plaintiff, at least as to four of the references.  The Department of State did not submit its CPARs for its four orders to the multi-agency past performance database where the army found them until after the date for submission of proposals in this acquisition.[10]  We also have no grounds to read into the word "recent" a reference solely to the year 2013.  Plaintiff does not question the agency's right to consider performance going back to 2009; the contracts in question were performed in 2011 and 2013.  Other references to statements by the SSEB are equally unavailing.  *See, e.g.,* AR 918 ("found within the last year" and "recent negative performance issues").  In short, plaintiff has not established that the SSEB was operating on a mistaken assumption with respect to when the deficient performance occurred.

That leaves us, however, with the decision of the SSA.  In further downgrading Red River's past performance rating to "No Confidence," she wrote that "this Offeror's Past Performance rating should be No Confidence, based on the five [contract references] found *for* the last twelve months." (Emphasis added). AR 936.  If the word used instead had been "in," then the government could argue that the SSA was literally correct. But "for" is different than "in," and words matter.  We read the SSA's statement for its natural meaning, and we conclude that she was therefore incorrect in her

---

10.  Plaintiff did not offer an explanation as to why it neglected to report the CPAR from the Department of Justice, which was submitted in 2012.  It did, however, provide a narrative explanation, as it did to the agency after the army inquired, as to why the performance problems encountered in that effort were the agency's fault, not its own.

13

assumption. The question remains whether that matters given the SSEB's view that plaintiff should have been rated "Limited Confidence." The government contends that plaintiff was not prejudiced because it cannot demonstrate that it should have received a "Satisfactory Confidence" rating, which is what it would have taken to place plaintiff in the competitive range.

Before considering that question, we want to address plaintiff's other primary argument with respect to past performance, which is that the agency erred in taking into account an unexpressed evaluation factor, namely, that offerors could be criticized for not reporting post-solicitation bad performance reports.

C. The Unstated Evaluation Criteria

Plaintiff argues that both the SSEB and the SSA relied on the fact that plaintiff did not report the five negative contract references in rating Red River as poorly as they did. Plaintiff correctly points out that it did not fail to report four of the five of these negative references because it did not receive them until after the closing date for proposal submission. The army's error was compounded, according to plaintiff, because, although the solicitation required offerors to self-report recent negative performance, the lack thereof was not a stated criteria for evaluation of past performance.

There is nothing in the analysis of the SSEB, however, which clearly establishes that it penalized plaintiff for not reporting the results of the five more recent contracts. Defendant concedes that it would have been improper if it had done so. Plaintiff did not receive the negative reports, at least for four of the disputed contracts,[11] until after the deadline for submission of proposals. The agency's consideration of the newly discovered information, on the other hand, was also not improper. The agency reserved "the right to use data provided in the offerors proposal and data obtained from other sources." AR 180. In addition, the solicitation states that the agency may consider "general trends in performances and demonstrated corrective actions." AR 187. The army, in fact, gave plaintiff an opportunity to comment on those later negative evaluations by making it an item for clarification ("IFC"). Plaintiff did so, and the army considered its explanation but found it insufficient to upgrade Red

---

11. Four references issued by the Department of State were dated November, 2013, and the remaining reference, issued by the Department of Justice, was dated February, 2012.

River's rating.  *See* AR 747-50. (SSEB Past Performance Report); AR 918-19 ("The IFC was responded to, but the response did not affect the Offeror's initial past performance rating.")

Plaintiff points to a statement in the agency's debriefing after it had been told of its exclusion from the competitive range.  Notes from that discussion, authored by a Contract Specialist, not the SSEB, SSA or CO, state that, when Red River asked, "How do you get No Confidence from two client's CPARs? Does Past Performance completely outweigh the other factors?", the agency's response is summarized as: "No.  DESCRIBED THE RELATIVE  IMPORTANCE  OF  EVALUATION  FACTORS.    Also considered was the fact that the CPARs were not reported."[12]  AR 964.  Moreover, when plaintiff protested at GAO, the agency's report in response to the protest, written by the CO, states that "Another CPAR reference contained negative information and had a 'marginal' rating from the assessing official.  This information was not self-reported by Red River (as required by the Solicitation), and this fact was taken into consideration as well in assessing the negative rating."  AR 9.

In sum, the most direct evidence of the SSEB's thinking in coming up with a rating of "Limited Confidence" reflects no markdown because plaintiff did not self-report the later-discovered poor performance references.  The debriefing and the report at GAO, however, suggest that the SSA improperly took that factor into account.  This is consistent with her decision to lower Red River's past performance score to "No Confidence."

D.  Plaintiff Was Not Prejudiced By The SSA's Mistakes

Plaintiff has thus established at least one and probably two mistakes by the SSA in her final decision.  This leaves us with the question of whether this entitles plaintiff to the remedy of being reintroduced into the competitive range or reevaluated. We think not. Given the broad discretion given to the agency in evaluating past performance, in the final analysis, the question is whether the assignment of a past performance rating was reasonable in light of the record and consistent with the stated evaluation criteria.  *See Todd Constr.,*

---

12.  Powerpoint slides authored by the CO and presented during the debriefing do not mention the lack of reporting as a factor in the SSA's "No Confidence" rating for Red River's Past Performance factor.  *See* AR 957.

*L.P. v. United States*, 88 Fed. Cl. 235, 247 (2009); *see also E.W. Bliss Co.*, 77 F.3d at 449.

The SSA reasonably determined that, "[g]iven the large number of Offerors that had a Past Performance rating better than Limited Confidence or No Confidence, there was no reason to consider Offerors with a rating of Limited Confidence or No Confidence, regardless of how low those Offeror's proposed prices may be." AR 940. Plaintiff was eliminated from the Phase II consideration because it did not achieve a "Satisfactory Confidence" rating. Plaintiff has to be able to demonstrate, not only that there was a mistake, but also that, but for the mistake, it would have had a high likelihood of getting into the competitive range. *See Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009); *Galen Med. Assocs.,* 369 F.3d at 1331.

We believe it is appropriate to answer this question mindful of the general context of how this sort of large procurement is often conducted by federal agencies, and more particularly, how this particular evaluation was conducted. It is common for an agency to assign the detailed fact gathering and analysis to an entity like the SSEB and for that entity to present its work to a final decision maker, like the SSA in this case. There is no clear reason here to question the work of the SSEB. The SSEB found, as memorialized in the SSAC slides, that the evaluation of Red River "revealed negative performance issues concerning quality, scheduling, late deliveries, damaged equipment, inconsistent communications with the government and management of key personnel." AR 846; *see also* AR 747 (SSEB Past Performance Report listing problematic elements of plaintiff's past performance record). It came to the conclusion it did in a reasonable and non-arbitrary way, and, as we conclude below, there would no basis for us to second guess the substance of its past performance analysis, including its considered judgments regarding how relevant plaintiff's prior contracts were or how bad deficiencies in performance really were.

Although plaintiff understandably makes the argument that we should be focusing on the final decision maker, the SSA, who probably was operating under a false assumption or two, plaintiff is still obligated to persuade us that, given the entire record, there is a reason to think the outcome would have been different if the SSA had not erred. It has not done so. The SSA further downgraded plaintiff's past performance rating. She did not question any of the SSEB's analysis. There is no reason to speculate that, on remand, the SSA would disagree with the SSEB and upgrade the rating. The SSEB's own rating of "Limited Confidence" was not enough to give plaintiff entry to the

competitive range.  Under these circumstances, it would be futile to remand for reconsideration, and there certainly would be no basis for inserting plaintiff into the competitive range.  Plaintiff therefore has not established that it was prejudiced by the SSA's mistake.

II.     Unequal Treatment of Offerors

Plaintiff also alleges that the agency's evaluation of proposals resulted in unequal treatment of offerors. Specifically, it argues that compared to plaintiff, other offerors that received the same rating ("Limited Confidence") under the Past Performance factor had more severe performance issues, and that the agency held plaintiff to a different evaluation standard under the Past Performance factor.

Plaintiff first argues that it was treated unequally because the two other offerors also assigned a "No Confidence" rating under the Past Performance factor had "catastrophic issues." It attributes one offeror's "No Confidence" rating to that offeror's failure to submit any past performance information its proposal,[13] and the other to the agency's discovery of multiple contract terminations.[14] Plaintiff contends that it is unlike those two offerors because it submitted all the required information in its proposal and had no terminations for default.  Plaintiff also directs our attention to several offerors which arguably had past performance issues similar to plaintiff but had been rated higher and included in the competitive range.

Defendant counters that plaintiff's claims simply demonstrate a mere disagreement with the rating it received.  It points out that past performance is not an assessment of the severity of plaintiff's prior performance issues but is instead an assessment of "the degree of confidence the Government has with the probability an offeror will successfully perform the solicitation requirements as based on the offerors record of recent and relevant contract performance." AR 178.  "The fact that other offerors' proposals may have

---

13. The agency assigned a rating of "No Confidence" for one offeror for "not submitting a Volume IV Past Performance proposal . . . and not complying with the instructions." AR 915.

14. Another offeror initially received a rating of "Unknown Confidence," which was later downgraded by the SSA to "No Confidence." *See* AR 924, 938.

deficiencies similar to the protester's, but were not excluded from the competitive range, does not, in and of itself, demonstrate unequal treatment." *Hamilton Sundstrand Power Sys. v. United States*, 75 Fed. Cl. 512, 519 (2007). Contracting officers are merely required to ensure that offerors "receive impartial, fair, and equitable treatment." 48 C.F.R. § 1.602-2(b) (2014). All the offerors' proposals, however, "need not be treated the same." 48 C.F.R. § 1.102-2(c)(3) (2014). The inclusion in or exclusion from the competitive range is based, not on comparison of the magnitude of deficiencies in offerors' proposals, but on evaluation of the overall proposal. *See Hamilton Sundstrand*, 75 Fed. Cl. at 519.

We have carefully examined the numerous particular instances plaintiff points to of alleged disparate treatment and conclude that we are in no position to criticize the agency's analysis. Perhaps in the abstract there would be room, for example, to argue that identical performance on the same work was rated differently, but there are no such clear examples here. Plaintiff's critique amounts to a request that we undertake a complete, subjective reevaluation of plaintiff's proposal, and, in doing so, compare Red River's past performance to each other offerors' for a magnitude of error analysis. The agency was not required to do that, and we are certainly in no position to do so.

III.    The Agency's Failure To Consider Plaintiff's Price

Next, we consider plaintiff's argument that the agency did not properly consider its price when it established the competitive range. Plaintiff contends that the SSA excluded its proposal from the competitive range because it was below a breakpoint that the SSA established without first giving any meaningful consideration to price. Defendant responds that the administrative record demonstrates that the agency did consider price and that plaintiff was not irrationally eliminated from the competitive range. We agree with defendant.

Generally, an agency is required to consider price before eliminating a technically acceptable proposal from the competitive range. *Femme Comp Inc.*, 83 Fed. Cl. at 731. An agency is not required, however, to accept all technically sound proposals in the competitive range, even if they have a low price, because "[s]uch a requirement would be contrary to the discretion afforded to the agency." *Id.* As we stated before, an agency has a broad discretion to choose among qualified offerors in doing a best-value determination. In making the competitive range determination based on best-value, the agency must document "the rationale for any business judgments

and tradeoffs made or relied on by the SSA, including benefits associated with additional costs." 48 C.F.R. § 15.308 (2014). The agency must avoid making any "[c]onclusory statements, devoid of any substantive content." *Serco Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008). It must "explain the reasons for that conclusion." *Bahr. Mar. & Mercantile Int'l BSC (C) v. United States*, 118 Fed. Cl. 462, 481 (2014) (citing *FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 381 (2011)).

In her competitive range determination, the SSA considered the offerors' Mission Support and Past Performance factors in conjunction with their proposed prices.  The SSA eliminated offerors with a rating of "Limited Confidence" and "No Confidence" regardless of how low their proposed prices were because there were a large number of offerors with a rating better than "Limited Confidence."  She rationalized her decision. stating, "[e]ven though some of these offerors have relatively low prices, I would be willing to pay a significant premium for offerors who do not have such negative Past Performance ratings." AR 940. Her rationale with respect to the Mission Support factor is similar: "Given the large number of Offerors with Mission Support ratings of Good, and with prices which are relatively low, I do not consider any Offerors with a Mission Support rating of Acceptable to be among the most highly rated proposals."  *Id.*

As we explain above, the agency does not have to include all technically acceptable proposals that have a low price in the competitive range. As the administrative record clearly shows, plaintiff's proposal failed to advance to Phase II, not because its proposed price was not taken into account, but because the agency lacked confidence in plaintiff's ability to perform the contract work given its past performance and because the agency had many other better-rated proposals.

IV.    Not Assigning A "Very Relevant" Rating To The SEWP IV Contract

Finally, plaintiff argues that the agency's rating of  "Relevant" with respect to one of its positive contract references, SEWP IV,[15]  was improper and that the rating should have been "Very Relevant." Plaintiff provides its own comparison between that particular contract and ITES-3H. The agency

---

15. Under Contract NNG07DA25B, NASA, for its Solutions for Enterprise-Wide Procurement ("SEWP") IV acquisition, made an IDIQ contract award to plaintiff in May 2007. AR 739.

responds that its rating was rational and that plaintiff has not demonstrated that it lacked a rational basis. Defendant also argues that, in any event, upgrading the rating to "Very Relevant" would be insufficient to insert plaintiff into the competitive range.

We agree with the agency on both points. When evaluating the relevance of an offeror's past performance, the agency is entrusted "with broad discretion in determining what information is relevant for consideration." *Linc Govt. Servs., LLC v. United States*, 96 Fed. Cl. 672, 718 (2010). Accordingly, we are not "empowered to substitute (our) judgment for that of the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). For us to conclude that the rating should have been "Very Relevant" instead of "Relevant," plaintiff must demonstrate "a significant error in the procurement process," and "that the error prejudiced" plaintiff. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

We are not convinced that plaintiff's challenge has met this burden. In finding the contract reference in question as "Relevant," the agency commented that it "involves [the] similar scope, magnitude of effort and complexities [as] this solicitation requires." AR 739. The detailed description of the nature of that contract, along with a lengthy assessment of plaintiff's performance, suggests that the agency was fully aware of what it entailed. Plaintiff's assurances that it amounts to the same work as the contract being bid and thus was "very" relevant is a matter of subjective judgment which the court is in no position to critique. Additionally, even if the characterization is too measured, we would have no basis for saying that the mistake merits advancing plaintiff to a "Satisfactory Confidence" rating.[16]

---

16. In connection with its allegations regarding price and the SWEP IV contract, plaintiff also argued that the agency failed to adequately document its evaluation: in the case of the price issue, failed to document that it considered price in its exclusion of Red River from the competitive range; and with respect to the SWEP IV contract, failed to document why plaintiff received only a rating of "Relevant" for that contract. This ancillary argument is as unavailing as plaintiff's principal arguments regarding these issues. As detailed above, we were able to discern how and why the agency made its ratings and competitive range determination as it did. This is all that the law requires. That plaintiff fundamentally disagrees with the underlying decisions is not a reason to find them inadequately documented.

CONCLUSION

The errors plaintiff has demonstrated in the agency's evaluation of plaintiff's proposal do not warrant reversal.  Plaintiff's motion for judgment on the administrative record is therefore denied.  Defendant's cross motion is granted.  The clerk is directed to dismiss the complaint with prejudice and enter judgment accordingly.  No costs.


 s/Eric G. Bruggink____
ERIC G. BRUGGINK
Judge